Case 3:24-cv-00344   Document 13   Filed on 06/23/25 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
June 23, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| K.F., | § | |
|     Plaintiff. | §§§§ | |
| V. | § | CIVIL ACTION NO. 3:24-cv-00344 |
| COMMISSIONER OF SOCIAL SECURITY, | §§§§ | |
|     Defendant. | §§ | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff K.F. seeks judicial review of an administrative decision denying his application for disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). K.F. and Defendant Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner")[1] have both filed briefs. *See* Dkts. 10, 11. After reviewing the briefing, the record, and the applicable law, I recommend the Commissioner's decision be reversed and this matter remanded for further proceedings consistent with this memorandum.

## BACKGROUND

On September 8, 2022, K.F. filed a Title II application for disability and disability insurance benefits alleging disability beginning July 12, 2022. His application was denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that K.F. was not disabled. K.F. filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] Bisignano became the Commissioner of Social Security on May 6, 2025. Bisignano is "automatically substituted" as the defendant in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if [he] is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See Salmond*, 892 F.3d at 817. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do [his] past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that K.F. "has not engaged in substantial gainful activity (SGA) since July 12, 2022, the alleged onset date." Dkt. 7-2 at 32.

The ALJ found at Step 2 that K.F. "has the following severe impairments: hypertension (HTN); coronary artery disease (CAD); obstructive sleep apnea (OSA); obesity; depression; panic disorder; and post-traumatic stress disorder (PTSD)." *Id*. at 33.

At Step 3, the ALJ found that K.F. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 34.

Prior to consideration of Step 4, the ALJ determined K.F.'s RFC as follows:

> [K.F.] has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except he can have occasional interaction with supervisors, coworkers, and the public.

*Id*. at 37.

At Step 4, the ALJ found that K.F. "is unable to perform any past relevant work." *Id*. at 42.

At Step 5, the ALJ elicited testimony from a vocational expert ("VE") that K.F. "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." *Id*. at 43. Thus, the ALJ found that K.F. is not disabled. *See id*. at 44.

3

## DISCUSSION

K.F. raises several issues for the court's review but I need address only one: whether the ALJ's RFC is supported by substantial evidence. Finding that it is not, I recommend this matter be remanded to the Commissioner for further proceedings consistent with this memorandum and recommendation.

An ALJ is not required to give "any specific evidentiary weight" to medical opinions. *See* 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability, the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-cv-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)). "As for consistency, . . . the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness

finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-cv-166, 2021 WL 3708047, at *5 (quotation omitted).

The state consultative examiner, Dr. NeCole Rivers, conducted a mental status examination of K.F. on December 20, 2022. In assessing K.F.'s functional capacity, Dr. Rivers made one particular observation that is relevant here. Dr. Rivers opined that K.F. "appears to have a poor ability to concentrate, persist and maintain pace with the ability to focus on work activities and stay on task at a sustained rate." Dkt. 7-7 at 211. The ALJ found this opinion "*supported* by Dr. Rivers' findings (7F/3)" and "*consistent* with the testimony." Dkt. 7-2 at 42 (emphasis added). Yet, despite finding Dr. Rivers's opinion both supported and consistent, the ALJ remarked that "the [Department of Veterans Affairs] records for the time period under review do not really support these findings (see 10F/20, 102-03[2]; 13F/58, 64, 81, 92-93, 100)," and that "during physical examinations, [K.F.] had intact mentation," meaning "[h]e was alert, oriented, and pleasant with normal speech, mood, affect, and thoughts." *Id.* Thus, the ALJ said that Dr. River's opinion was only "somewhat persuasive." *Id.* In crafting K.F.'s RFC, the ALJ incorporated no restrictions corresponding to an inability to maintain concentration, persistence, and pace. K.F. asserts that this analysis was "*legally erroneous.*" Dkt. 10 at 12. I agree.

The VA records to which the ALJ cites are nothing more than documentation that K.F. participated in virtual mental health workshops. *See* Dkt. 7-7 at 356 (K.F. participated in two 60-minute virtual drop-in workshops titled Introduction to Mindfulness); Dkt. 7-8 at 254–55, 260, 277–78 (K.F. was one of several participants in three 90-minute workshops titled "Taking Charge of My Life and Health"). These short, virtual sessions always included other participants, and the facilitator—which was sometimes only a Social Science Program Specialist, as

---

[2] I suspect this citation is meant to be to 13F/102–03, as 10F contains only 37 pages. In any event, 13F/102–03 is redundant with 10F/20, as both are records of the same two workshops on February 7, 2023, and March 7, 2023. *Compare* Dkt. 7-7 at 356, *with* Dkt. 7-8 at 298–99.

opposed to a psychologist or psychiatrist—never made any direct observations about K.F.'s mental status. Thus, it is difficult to see how anything in these records undercuts Dr. Rivers's opinion about K.F.'s ability to maintain concentration, persistence, and pace—an opinion the ALJ said was supported and consistent.

The ALJ also cites 13F/92-93 in support of her statement that the VA records do not support Dr. Rivers's findings. Yet, 13F/92-93 are mental health questionnaires that *do* support Dr. Rivers's findings, at least as to K.F.'s ability to concentrate, persist, and maintain pace. In those questionnaires, K.F. endorses trouble concentrating and motor retardation for several days over the preceding two weeks and extreme difficulty working and attending to household chores. *See* Dkt. 7-8 at 288–99. Again, I fail to understand how these records undercut anything in Dr. Rivers's assessment of K.F.'s mental functional capacity, and the ALJ offers no clarifying explanation.

Lastly, the ALJ cites two brief meetings that K.F. had with cardiologists for the proposition that K.F. was "alert, oriented, and pleasant with normal speech, mood, affect, and thoughts," and therefore Dr. Rivers's opinion of K.F.'s mental capacity was only "somewhat persuasive." Dkt. 7-2 at 42 (citing Dkt. 7-7 at 20, 25, 366–67). Yet the ALJ fails to explain how passing observations from cardiologists undercut the findings of a psychologist, Dr. Rivers, who examined K.F. specifically to assess his functional mental capacity and opined that K.F. has a poor ability to concentrate, persist, and maintain pace. Moreover, the ALJ fails to explain why an alert and pleasant individual with normal speech and thoughts could not also have difficulty concentrating, persisting, and maintaining pace. Indeed, contrary to the ALJ's analysis, Dr. Rivers assessed K.F. as having a poor ability to concentrate, persist, and maintain pace *despite* easily establishing rapport with K.F. and finding him "alert and oriented" with a "normal" rate of speech and "average" thought patterns. Dkt. 7-7 at 210. The ALJ is free to reject Dr. Rivers's opinion—but her reason for doing so must make sense.

6

Simply put, there is no logic bridge between the ALJ's findings that Dr. Rivers's opinion is "supported" and "consistent" and the ALJ's failure to account for that opinion—specifically as to concentration, persistence, and pace—in crafting K.F.'s RFC. Dkt. 7-2 at 42. This error is prejudicial. The VE testified that K.F. "could not sustain full-time employment" if he "were going to be off task 20% or more" of the time. *Id.* at 72. Thus, it is possible that there would not be sufficient jobs available in the national economy and K.F. would be found disabled if the ALJ had properly evaluated Dr. Rivers's opinion and incorporated her opinion regarding K.F.'s ability to maintain concentration, persistence, and pace into K.F.'s RFC. This requires remand.

## CONCLUSION

Because the ALJ's decision is not supported by substantial evidence, I recommend the Commissioner's decision be reversed and this matter remanded to the Commissioner for further proceedings consistent with this memorandum.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 23rd day of June 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE